IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY LUCERO, KEN DAHLSTROM
JOHN MINTER and CLAUDIA ROMERO,

        Plaintiffs,

vs.                                                 No.1:07 CV-00499 JCH/RLP

THE NEW MEXICO LOTTERY;
TOM ROMERO, Individually, And In His Official
Capacity As The Chief Executive Officer Of The New Mexico
Lottery; PAT BEARE, Individually, And In His Capacity
As the Director of Sales Of The New Mexico Lottery; and
EVELYN McKNIGHT, Individually, And In Her
Official Capacity As The Director Of Human
Resources Of The New Mexico Lottery,

        Defendants.

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

        COME NOW Defendants, and submit the following Response to Plaintiffs' Motion for Summary Judgment on the Property Interest Claim (the "Motion").

## INTRODUCTION

        Plaintiffs argue in the Motion that they had a property interest in their employment with the Lottery based on an alleged implied contract. Plaintiffs rely on a Positive Discipline Policy that was repealed in 2002 for their implied contract claim, alleging in the Complaint and the Motion that the repealed Policy required progressive discipline before Plaintiff Lucero could be laid off in 2007, and before Plaintiffs Dahlstrom, Minter and Romero quit in 2007.

        Plaintiffs filed their Motion in an attempt to salvage a claim that clearly fails and should be dismissed. In the Motion, Plaintiffs misrepresent the case law and the Positive Discipline Policy and essentially ask the Court to ignore the Lottery Policies which informed them that they did not have a

contract, and at least 24-25 Acknowledgment Forms signed by each Plaintiff in which they agreed they did not have a contract, the Policies were not contracts and/or that they were employed at-will.

As discussed below, the Motion clearly fails.  In addition, Defendants have filed Summary Judgment Motions related to each Plaintiff (collectively referred to as "Defendants' MSJs").  Each of Defendants' MSJs more fully describes why each Plaintiff's property interest claim fails.  (Docs 92-95.)

## RESPONSE TO UNDISPUTED MATERIAL FACTS

For purposes of this Response only, Defendants respond as follows to the "Undisputed Material Facts" ("UMFs") asserted by Plaintiffs.

1.      Defendants do not dispute UMF 1.

2.      Defendants do not dispute UMF 2.

3.      UMF 3 is disputed because it does not accurately and fully summarize the Positive Discipline Policy.  Plaintiffs conspicuously omit the fact that the Policy stated that the Lottery "in its sole discretion" determines whether to use any of the steps in the Policy, whether to omit any or all of the steps, and whether to move directly and immediately to termination.  Specifically, the Policy states:

The positive discipline policy consists of the following steps:

1.      Oral Reminder
2.      Written Reminder
3.      Decision Making Leave
4.      Termination

These steps will generally be taken in the order listed.  Any and all of the first 3 steps may be omitted, at the sole discretion of NMLA, depending on the circumstances of any particular situation or when serious offenses have been committed.

(Motion at Exhibit 5.)

4.      UMF 4 is disputed because Plaintiffs did not fully and accurately summarize the Policy. As noted above, the Policy provides that the Lottery, "in its sole discretion" can omit all disciplinary steps

and go immediately to termination (which is consistent with the at-will nature of Plaintiffs' employment). The language referred to by Plaintiffs applied only if the Lottery had "in its sole discretion" decided to utilize a Decision-Making Leave. In the event, that the Lottery decided to administer a Decision Making Leave, the Policy reads, in part:

> Discharge
>
> 1. Any matter or incident which, <u>at NMLA's sole discretion</u>, would result in a disciplinary action which occurs <u>during a twelve (12) month period after an employee has received a Decision Making Leave</u>, and chosen to return to work; other instances of repeated or serious misconduct, poor performance, <u>or any other reason deemed sufficient by NMLA management</u> may result in separation from employment by discharge.

(Motion at Exhibit 5, p. 6.)

        5.        UMF 5 is disputed. Plaintiffs <u>now</u> claim they "understood" that the Positive Discipline Policy would be applied before termination and that they could only be terminated for "sufficient cause." However, as discussed below, their alleged subjective understandings since their employment relationship ended are insufficient to create an implied contract in light of the Employment Application form and the numerous Acknowledgment Forms signed by Plaintiffs <u>prior to and during</u> their employment, <u>including Acknowledgments signed at the time the Policy was first adopted, when it was repealed and after the Policy was repealed.</u> In these forms, Plaintiffs acknowledged and agreed that they were at-will and/or that the Policies were not contracts. Further, the plain language of the Policies states that they are not contracts and that employment is at-will. Moreover, the Positive Discipline Policy was repealed (with written notice to the Plaintiffs) over five years before the employment actions at issue. Finally, Plaintiffs also ignore the fact that nowhere in the Positive Discipline Policy or any other policy is there any "sufficient cause" standard or requirement. (Additional Facts 1-22, *infra*.)

        6.        UMF 6 is disputed. The Policy was repealed on March 14, 2002, <u>not</u> March 14, 2004.

7.      Defendants do not dispute the statement in UMF 7 that the Lottery did not seek the permission of the Plaintiffs to repeal the Policy.  As discussed below and in Defendants' MSJs, under its policies, the Lottery retained the unilateral right to modify or repeal its policies.  Further by statute, only the Lottery and the Board may adopt and repeal policies.  NMSA 1978, §§ 6-24-6(A)(19) and 6-24-7(A).  The remainder of UMF 7 is disputed inasmuch as, in New Mexico, consideration is implied and each Plaintiff received continuing employment, compensation and other benefits for more than five years after the Policy was repealed.  (UMF 12 to each of Defendants Motions, Doc. Nos. 92-95.)

## ADDITIONAL MATERIAL FACTS SHOWING THAT PLAINTIFFS DID NOT HAVE A PROTECTED PROPERTY INTEREST

**Plaintiffs were employed at will.** [1]

1.      When the Plaintiffs were hired, they each read, signed and understood an Employment Application.  (UMF 2 to Dahlstrom, Lucero, Minter and Romero MSJs.)

2.      The Employment Application contains a section titled "Applicant's Consent and Agreement," which in part, states as follows:

> …I will abide by all of the policies and procedures now in existence or later adopted.  I understand that these policies and procedures may be changed at any time and if they are, I agree to abide by them.  <u>I understand that my employment can be terminated, with or without cause, at the option of either the NML[A] or myself, and with or without warning or notice, at any time by NML[A].</u>  I understand that neither this document nor any offer of employment from the NML[A] constitutes an employment contract unless a specific document is executed in writing by the employer and employee.  <u>Unless a specific document is executed in writing between NML[A] and the employee, all employment is At-Will.</u>

(UMF 3 to Dahlstrom, Lucero, Minter and Romero MSJs.)

---

[1]    Citations are to the four (4) Motions for Summary Judgment filed by Defendants on March 25, 2008:  Doc. 92 (Dahlstrom), Doc. 93 (Lucero), Doc. 94 (Minter) and Doc. 95 (Romero).  The Motions are cited and referred to herein in the following manner:  Dahlstrom MSJ, Lucero MSJ, Minter MSJ, and Romero MSJ.  The UMFs and supporting evidence and exhibits referenced in these Motions are not re-attached to this Response, but are incorporated herein by reference.

3.      When the Plaintiffs were hired, each read, signed and understood an Acknowledgment

Form, acknowledging that they had received, read and understood the Lottery's Employee Handbook.

The Acknowledgment Form also states that:

> <u>Nothing in this handbook should be interpreted as a contract of employment of any kind.</u>  The policies contained within the handbook are provided for guidance purposes only.  Such policies and procedures are subject to change at any time and if they are changed, I agree to abide by them.  <u>I understand that employment at the New Mexico Lottery is at-will at all times.  At-will employment means that the employment relationship at any time, for any reason can be terminated with or without cause, at the option of either NML[A] or myself, and with or without warning or notice, at any time by the NML[A].</u>

(UMF 4 to Dahlstrom, Lucero, Minter and Romero MSJs.)

4.      In 1997 and 1998, each of the Plaintiffs read signed and understood four

Acknowledgment Forms, acknowledging they had been given different policies.  The Acknowledgment

Forms all state:

> Nothing in this policy or manual should be interpreted as a contract of employment of any kind.  The policies contained within the manual are provided for guidance purposes only.  Such policies are subject to change at any time and if they are changed, I agree to abide by them.

(UMF 5 to Dahlstrom, Lucero, Minter and Romero MSJs.)

5.      Each of the Plaintiffs agrees that the Positive Discipline Policy <u>only</u> applies to

performance, conduct and attendance, (and Plaintiffs' counsel has agreed to stipulate that the Policy <u>only</u>

applies to performance, conduct and attendance. (UMF 9 to Dahlstrom, Lucero, Minter and Romero

MSJs.)

6.      The Plaintiffs agree that the Policy does not apply when a position is eliminated

and does not have to be applied before an employee's workload is increased.  (UMF 10 to

Dahlstrom, Minter and Romero MSJs.)

7.      On June 23, 1998, the Lottery adopted a Separation from Employment Policy,

which provides that the "[Lottery] retains the right to terminate employment at any time." (UMF 11 to Dahlstrom, Lucero, Minter and Romero MSJs.)

       8.     The Positive Discipline Policy and Separation from Employment Policy, along with others, was distributed along with an Acknowledgment Form. Plaintiffs Lucero, Romero and Minter read, signed and understood the Acknowledgment Form, which states:

> I further acknowledge that neither this Employee Policy Manual, nor this acknowledgment alters the at will nature of my employment with NMLA and none of the provisions in the policy manual create or are intended to create an employment contract or any part of an employment contract, either expressed or implied with the NMLA. The policies contained within the manual are provided for guidance purposes only. Such policies and procedures are subject to change at any time solely at NMLA's discretion and if they are changed, I agree to review any such changes. I understand that employment at the New Mexico Lottery Authority (NMLA) is at will at all times. At will employment means the employment relationship at any time, for any reason can be terminated with or without cause, at the option of either NMLA or myself, and with or without warning or notice, at any time by NMLA.

(UMF 12 to Dahlstrom, Lucero, Minter and Romero MSJs.)

       9.     The Lottery does not have a signed copy of this Acknowledgment Form from Dahlstrom, but has signed copies from the other Plaintiffs and Dahlstrom did not refuse to sign this Acknowledgment Form. (UMF 13 to Dahlstrom MSJ.)

       10.    On January 20, 1999, each of the Plaintiffs read, signed and understood an Acknowledgment Form, acknowledging that they had received the Fleet Management Policy and that:

> I further acknowledge that neither this NMLA policy, nor this Acknowledgment alters the at-will nature of my employment with NMLA and none of the provisions of the policy create or are intended to create an employment contract of any part of an employment contract, either expressed or implied with NMLA. The policy is provided for guidance purposes only. Such policy and procedures are subject to change at any time solely at NMLA's discretion and if they are changed, I agree to review any such changes.

(UMF 14 to Dahlstrom MSJ; UMF 13 to Lucero, Minter and Romero MSJs.)

11.    In January or February 2000, each of the Plaintiffs read, signed and understood yet another Acknowledgment Form, acknowledging that they received a revised version of the Lottery's Employment Manual, had read it and understood the policies. Each also acknowledged:

> I further acknowledge that <u>neither this Employee Policy Manual, nor this acknowledgment alters the "at-will" nature of my employment with the NMLA and none of the provisions in the policy manual create or are intended to create an employment contract, or any part of an employment contract, either expressed or implied with the NMLA.</u> The policies contained within the manual are provided for guidance purposes only. Such policies and procedures are subject to change at any time solely at NMLA's discretion and if they are changed, I agree to review any such changes. <u>I understand that employment at the New Mexico Lottery Authority (NMLA) is "at-will" at all times.</u> At-will employment means that the employment relationship at anytime, for any reason can be terminated with or without cause at the option of either NMLA or myself, and with or without warning or notice, at any time by NMLA.

(UMF 16 to Dahlstrom MSJ; UMF 14 to Lucero, Minter and Romero MSJs.)

12.    The Employee Manual contained an Introductory Statement, which states:

> This manual is not a contract of employment, nor is any provision in it meant to be part of any contract of employment either expressed or implied. <u>Employment with NML[A] is employment "at will". This means that either the employee or NML[A] may terminate the employment relationship at any time and for any reason.</u> No employee, manager or supervisor of NML[A] other than the CEO in writing, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the provisions set forth in the Employee Policy Manual.

(UMF 17 to Dahlstrom MSJ, UMF 15 to Lucero, Minter and Romero MSJs.)

13.    The above-referenced Employee Manual contained the Separation from Employment Policy and the Positive Discipline Policy. (UMF 18 to Dahlstrom MSJ, UMF 16 to Lucero, Minter and Romero MSJs.)

14.    In August and September 2000, Plaintiffs read, signed and understood an Acknowledgment Form, acknowledging that they had received seven (7) different policies, had read them, and understood them. Plaintiffs further acknowledged that:

I further acknowledge that neither these policies, nor this Acknowledgment alters the at-will nature of my employment with NMLA and <u>none of the provisions in the policy manual create or are intended to create an employment contract or any part of an employment contract, either expressed or implied with the NMLA.</u>  The policies are provided for guidance purposes only.  Such policies and procedures are subject to change at any time solely at NMLA's discretion and if they are changed, I agree to review any such changes.

(UMF 19 to Dahlstrom MSJ, UMF 17 to Lucero and Minter MSJs.)

15.     In 2001 and 2002, the Plaintiffs signed, read and understood seven (7) Acknowledgment Forms, acknowledging that they received various new or revised policies and procedures.  By signing the forms, Plaintiffs acknowledged that each policy or procedure "should not be interpreted as a contract of employment of any kind."  (UMF 20 to Dahlstrom MSJ, UMF 18 to Lucero and Minter MSJs; UMF 17 to Romero MSJ.)

16.     On March 14, 2002, more than five (5) years prior to the employment actions at issue in this case, the Lottery's Board repealed the Positive Discipline Policy.  (UMF 21 to Dahlstrom MSJ, UMF 19 to Lucero and Minter MSJs; UMF 18 to Romero MSJ.)

17.     On March 14, 2002, all Lottery employees were sent an Acknowledgment Form along with some new policies that had been adopted.  Each of the Plaintiffs read, signed and understood the Acknowledgment Form, which states in part:

The authority of the Board of Directors <u>has repealed the Positive Discipline Policy effective March 14, 2002.</u>  Please remove the policy from your policy book and change your dividers to reflect the revised Table of Contents.
* * *
<u>I understand that the NMLA is an "at-will" employer.  The material contained in the above policy should not be interpreted as a contract of employment of any kind.  I have read the information and I fully understand the information provided to me.</u>

(UMF 22 to Dahlstrom MSJ; UMF 20 to Lucero and Minter MSJs; UMF 19 to Romero MSJ.)

18.     Later in 2002 and 2003, the Plaintiffs read, signed and understood four (4) or five (5) Acknowledgment Forms acknowledging that they had received various new or revised policies and that

the policies "should not be interpreted as a contract of employment of any kind." (UMF 23 to Dahlstrom MSJ; UMF 22 to Lucero MSJ; UMF 21 to Minter MSJ UMF 20 to Romero MSJ.)

19.     In December 2003 and January 2004, the Plaintiffs read, signed and understood an Acknowledgment Form, acknowledging that they had received the Employee Handbook, and that the "material contained in the Employee Handbook should not be interpreted as a contract of employment of any kind." (UMF 24 to Dahlstrom MSJ; UMF 23 to Lucero MSJ; UMF 22 to Minter MSJ; UMF 21 to Romero MSJ.)

20.     The Handbook contained an Introduction which informed the Plaintiffs that it summarized the Policies in the Employee Manual and stated:

> This handbook and the employee procedure manual are not contracts of employment, nor are any provisions in them meant to be part of any contract of employment, either express or implied.  Employment with the NMLA is employment "at-will."  This means that either the employee or the NMLA may terminate the employment relationship at any time and for any reason or no reason.  No employee, manager, or supervisor of the NMLA other than the Chief Executive Officer (CEO), has any authority to enter into any agreement for employment for any specified period of time.  All employment contracts or agreements with the NMLA must be in writing and signed by the CEO.

(UMF 25 to Dahlstrom MSJ; UMF 24 to Lucero MSJ; UMF 23 to Minter MSJ; UMF22 to Romero MSJ.)

21.     Later in 2004 and 2005 Plaintiffs signed and understood three (3) or four (4) Acknowledgment Forms acknowledging that they had received certain policies and that the policies "should not be interpreted as a contract of employment of any kind." (UMF 26 to Dahlstrom MSJ; UMF 25 to Lucero MSJ; UMF 24 to Minter MSJ; UMF 23 to Romero MSJ.)

22.     Each of the Plaintiffs admits that he or she  does not have a contract in writing signed by the Lottery CEO and herself or himself.  (UMF 27 to Dahlstrom MSJ; UMF 26 to Lucero MSJ; UMF 25 to Minter MSJ; UMF24 to Romero MSJ.)

## ARGUMENT

An employee's employment status is a protected property interest <u>only</u> if he had an express or implied right to continued employment. *See, e.g, Bishop v. Wood*, 426 U.S. 341, 343-44 (1976). An employee's at will status "forecloses a property interest claim because the employee has no legitimate expectation of future employment." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991).

**A.      Plaintiffs' tenures as Lottery employees do not create a property interest.**

In the Motion, Plaintiffs argue that they had a property interest in continued employment "simply by virtue of their longevity . . . regardless of the terms of the employment manual." In support of this argument, Plaintiffs rely on *Lovato v. City of Albuquerque*, 106 N.M. 287, 742 P.2d 499 (1987). <u>Plaintiffs are wrong and grossly misrepresent</u> *Lovato*.[2]    *Lovato* does <u>not</u> in any way stand for the proposition that simply because Plaintiffs were employed by the Lottery for 11 years that they have a property interest in their employment.

In *Lovato,* the plaintiff worked as a classified City of Albuquerque employee, in various positions, for twenty-seven years. *Id.* at 288, 742 P.2d at 500. As a classified employee, <u>under City ordinance and personnel rules</u>, he was entitled to certain rights, including recourse to a grievance procedure. The plaintiff was removed from a thirteen year "temporary" assignment that resulted in a reduction in pay. *Id.* He filed a grievance, but it was denied based on the City's interpretation that he was not covered by the ordinance and rules because of his "temporary assignment" status. The City's personnel rules specifically exempted from the grievance provisions a person removed from a temporary assignment status and reassigned to another position. *Id.* at 289, 742 P.2d at 501.

---

[2] It should be noted that, in the 20 years since *Lovato* was decided, no court has cited it for the proposition that simply by "virtue of their longevity" an employee has a property interest.

The plaintiff filed a lawsuit, requesting that the City be ordered to grant him a hearing before the personnel board on the merits of his reassignment and pay reduction. On appeal, the New Mexico Supreme Court observed that "[t]he sufficiency of any claim of entitlement must be decided by reference to the independent source of rules or understandings that secure the benefit." *Id.* Relying on the ordinances and personnel rules, the Court held for the plaintiff, concluding that "after a thirteen year employment in [the] assignment position, [the employee's] employment at the position, grade, and pay rate prior to transfer could not be considered a temporary, discretionary advancement within the meaning of the merit system and personnel rules." *Id.* (quoting Albuquerque, N.M., Merit System Ordinance § 2-9-7, Revised Ordinances 1974 and Personnel Rules and Regulations §§ 451-52).

Clearly, *Lovato* is in no way applicable to this case. First, the holding is not as Plaintiffs represent. As stated by Magistrate Judge Molzen, "*Lovato* stands for the proposition that an employee having held a position for over a decade cannot be denied the grievance procedure to which classified employees are in fact and in writing entitled, simply by virtue of the 'temporary' description or label given to that position." *Lee Watts v. New Mexico State University, et al*, CIV 01-1107 KBM/LCS (Memorandum Opinion and Order). *Lovato* in no way stands for the proposition that simply being a long term employee creates a property interest.

Second, the holding in *Lovato* is fact specific based on the City of Albuquerque ordinances and policies. As recognized by Judge Molzen, "*Lovato* applies to a very narrow situation . . . *Lovato* is limited to a specific and written Albuquerque ordinance and set of personnel rules." *Id.* None of the rules and ordinances relied on in *Lovato* are present here. Unlike in *Lovato*, Plaintiffs were not temporarily assigned to positions and the Lottery did not have an ordinance or policy that gave employees a grievance procedure.

Moreover, unlike in *Lovato*, as discussed below and in Defendants' MSJs, the evidence demonstrates that Plaintiffs agreed when they were hired that their employment was at-will, and they agreed in writing in approximately 25 acknowledgment forms that they were at-will, that the Policies were not contracts and/or that the Policies could change. Further, the policies themselves state they are not contracts and that employment at the Lottery is at-will. Accordingly, the Motion should be denied.

**B.      The Positive Discipline Policy did not create an employment contract.**

Plaintiffs argue that a Positive Discipline Policy that had been repealed and had not been in effect for over five years created a contract of employment that prevented the Lottery from restructuring and laying off employees or reassigning additional work to employees without progressive discipline. [3] (Motion at pp. 5-7.)

Under New Mexico law, employment relationships are presumed to be at-will. *Trujillo v. Northern Rio Arriba Elec. Co-op., Inc.,* 2002-NMSC-004, ¶ 22, 131 N.M. 607, 41 P.3d 333. The at-will presumption may be modified into an implied contract only by employer representations which restrict its right to discharge the employee. *Id.* However, such representations "must be sufficiently explicit to create a reasonable expectation of an implied contract." *Id.* Moreover, "before these expectations [on the part of the employee] can be [considered] 'reasonable,' they must satisfy a certain threshold of objectivity." *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995).

---

[3] The Positive Discipline Policy did not require progressive discipline. However, as discussed in Defendants' MSJs, even if it did, it is well established that such procedural protections do not create a property interest. *Cambell v. Mercer*, 926 F.2d 990, 993 (10th Cir. 1991). Thus, the only way they can show a property interest is if they show that they could only be terminated for cause; however, the repealed Policy did not include a "cause" requirement, was part of a manual of policies that clearly stated that employment was at-will and the repealed Policy was provided with an Acknowledgment Form which plainly stated that the Policy was not a contract that employment was at-will, and defined what at-will meant. (Additional Facts 7-22, *supra*.).

1.      <u>The language of the Positive Discipline Policy does not create a contract.</u>

In the Motion, Plaintiffs reference and summarize various portions of the Positive Discipline Policy.  (Motion at pp. 5-6.)  As discussed in Defendants' Motions, the Policy was in effect from 1998 to 2002, when it was repealed by the Lottery.  Although not specifically stating so, Plaintiffs appear to allege that the language of the Policy created an implied contract.  This argument fails.

First, a reading of the Positive Discipline Policy shows that it merely outlined a general approach for handling personnel issues.  The Policy did <u>not</u> delineate the absolute circumstances when discipline would or would not be administered, and it imposed no limitations on the Lottery's right to terminate. The Policy merely set out a procedural framework <u>if</u> discipline at some level was deemed appropriate "in the sole discretion" of the Lottery.  The Positive Discipline Policy stated in part as follows:

> These steps will generally be taken in the order listed.  <u>Any and all of the first 3 steps may be omitted, at the sole discretion of NMLA, depending on the circumstances of any particular situation or when serious offenses have been committed.</u>

(Motion at Exhibit 1, p. 1.)  This language makes it clear that the steps are not established procedures that govern the employment relationship.  Management had discretion to not apply discipline or not in its "sole discretion" (*Id.*)  <u>If</u> the Policy is used, management had discretion to use any step, to skip steps, to stay at the same step, to go to a higher step, <u>or to go directly to termination without using any steps</u>.

Second, the Policy did <u>not</u> state or imply that the Lottery could only terminate employees for "sufficient cause" or that the it could only terminate an employee after the progressive discipline as Plaintiffs have claimed.    Thus, the plain language of the Policy did <u>not</u> create an implied contract requiring progressive discipline and "sufficient cause" for termination.  Accordingly, the Motion should be denied.

## 2.      *McGinnis* and *Lukoski* do not help Plaintiffs.

In support of their argument that the Positive Discipline Policy created a contract of employment, Plaintiffs cite to *Lukoski v. Sandia Management Company,* 106 N.M. 664, 748 P.2d 507 (1988) and *McGinnis v. Honeywell,* 110 N.M. 1, 791 P.2d 452 (1990), where employment contracts were found by the Court.[4]   Neither of these cases helps Plaintiffs.

In *McGinnis,* a contract was based on Honeywell's written procedures for layoffs, because:

> Here there was evidence that it was Honeywell's policy to take uniform and consistent actions regarding termination and that supervisors were required to follow applicable policies, that Honeywell would follow its written policies to the letter, and that the realignment policy could not be ignored and had to be applied.

In *Lukoski,* the court's finding of an implied contract turned on the fact that the handbook characterized the disciplinary policy regarding warnings, suspensions and termination "as an established procedure" regarding discipline.   The court reasoned that defining a policy as an "established procedure" meant that it was more than a general guideline and evidenced the employer's intent to be bound by it.

Here, unlike in *McGinnis* and *Lukoski*, the Positive Discipline Policy did not contain any reference or allow any inference that it was an "established procedure."   Indeed, as discussed below and in the Defendants' MSJs, the Policy was repealed in 2002, over five years before the employment actions at issue.   Additionally, unlike in *McGinnis*, Plaintiffs have presented no evidence of a systematic application of the Policy.   Rather, as testified by Evelyn McKnight, Director of Human Resources, the Policy was a guideline and the Policy could be used by a supervisor or not used.   (Deposition of McKnight at pp. 39-40, attached as **Exhibit A**.)

---

[4]   Plaintiffs also cite to *Kestenbaum v. Pennzoil Company*, 108 N.M. 20, 766 P.2d 280 (1988), for the proposition that employment contracts can be based on oral representation.   However, in this case, Plaintiffs have not alleged that their contract claim is based on oral representations.   Rather, they base their claim on the Positive Discipline Policy.   (Complaint at ¶¶ 48-51).   Regardless of whether the representations relied upon are oral or written, a plaintiff must show that, based on the circumstances, they were objectively reasonable expectations which created a contract.

Plaintiffs ignore discipline policy cases where the courts have held no contract to exist.  For example, in *Sanchez v. The New Mexica*n, 106 N.M. 76, 738 P.2d 1321 (1987), the manual repeatedly states what <u>will</u> be done by the employer.  *Id.*  The manual states that "the employer will attempt to give an employee who is in danger of discharge 'repeated warnings,'" and that "the employer will fire an employee without having given such warnings only 'for cause.'"  *Id.*  Nevertheless, the Court held that the language was not sufficiently specific or promissory to constitute a contract of employment.  *Id.*  The Court held that the employer's handbook lacked specific contractual terms which might evidence the intent to form a contract.  The Court further held that where the language is of a non-promissory nature and merely a declaration of the employer's general approach to the subject matter discussed, there is no implied contract of employment.  *Id.*

*In Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993), the plaintiff relied upon an employee handbook entitled "Fair and Square Policies."   A portion of the manual was labeled "Logical and Practical Rules," which included a laundry list of "actions leading to severe disciplinary action or discharge."  The court held that there was "no reason why the list should be deemed inclusive of all reasons for which an employee might be disciplined or terminated, or indeed, why the list should preclude discharge for no reason at all."  *Id.*  The court stated that nothing in the handbook reflected an "established procedure" regarding discipline.  The court required language "that directly or indirectly refers to a policy that [the employer] will fire employees only for just cause" in order to find an implied contract.  Id.  Moreover, the Court stated that ". . . we always have required that the promise that is claimed to have altered the presumed at-will term be sufficiently explicit to give rise to reasonable expectations of termination for good cause only. . . ."  *Id.* (citations omitted.)

In this case, the repealed Policy did not contain an explicit promise or "established procedures" regarding discipline.  The language of the Policy was more closely analogous to the language in *Sanchez*, and *Hartbarger*, than to the cases cited by Plaintiffs.  Accordingly, the Motion should be denied.

**3.        Plaintiffs' beliefs and understandings do not create a contract.**

Plaintiffs argue that the Positive Discipline Policy created an implied contract based on their beliefs and understandings.  (Motion at p. 7.)  In support of these statements, each Plaintiff and former Lottery employee Trevas Younger, submit affidavits, which in short, all assert that:

- They "understood that the Positive Discipline Policy applied to them, and that if there were disciplinary action to be taken against them, the . . . Policy would apply."  (Motion at p. 6, referencing the Affidavits.)

- They further "understood that they would not be terminated or disciplined except for poor performance, inappropriate conduct, or failure to attend work."  (*Id.*)

As an initial matter, it should be noted that Plaintiffs never specifically state why they had these understandings. They simply reference the Policy and then allege in conclusory manner that they had the understandings, without explaining why.  Plaintiffs' beliefs and understandings fail to create an implied contract because they are not objectively reasonable for a number of reasons.

First, Plaintiffs' "alleged understandings" when looked at together demonstrate why they are not reasonable.  To wit:  They argue in the Motion that "if there [was] disciplinary action" the Policy applied. (Motion at p. 6.) They have also admitted that the Positive Discipline Policy only applied to "poor performance, inappropriate conduct, or failure to attend work."  (*Id.*; *see also* Dahlstrom MSJ at UMF 9.) Thus, they admit that the Policy only applied in discipline situations, not where someone is laid off during a down-sizing, or when a sales territory is changed.  In other words, it is not objectively reasonable, and is in fact illogical, to conclude that a discipline policy that applied only to poor performance, inappropriate

conduct or failure to attend work, would amount to a policy that prevents the Lottery from eliminating and restructuring positions and work assignments.

Second, Plaintiffs' alleged "understanding" was not objectively reasonable because the Positive Discipline Policy was repealed in 2002, five years before Lucero was laid off and the other Plaintiffs resigned. Each Plaintiff was aware that the policy had been repealed and until now never claimed that it could not be repealed. (Dahlstrom MSJ at UMF 22; Lucero and Minter MSJs at UMFs 20; Romero MSJ at UMF 19.)

Plaintiffs apparently try to get around this important fact by claiming in the Affidavits that they held this belief because Dahlstrom, Romero and Younger were allegedly disciplined under the Policy after it was repealed. Plaintiffs' conclusory assertions are not factually supported and are contradicted by the evidence. The Policy discusses the following discipline steps:

> The positive discipline policy consists of the following steps:
>
> 1.   Oral Reminder
> 2.   Written Reminder
> 3.   Decision Making Leave
> 4.   Termination
>
> These steps will generally be taken in the order listed. Any and all of the first 3 steps may be omitted, at the sole discretion of NMLA, depending on the circumstances of any particular situation or when serious offenses have been committed.

(Motion at Exhibit 5.) A review of the documents relied upon by Plaintiffs demonstrates that the referenced actions were not taken pursuant to the repealed policy.

With respect to the Dahlstrom documents, Dahlstrom was given a "Written Warning," not a "Written Reminder," which is discussed in the policy. (Motion at Exhibit 2C.) There is no evidence that he was given an "oral warning" (as Plaintiffs claim is required under their "progressive discipline" theory before a "Written Reminder" can be given) or that any of the procedures discussed in the Policy were

followed.  None of the documents attached to his Affidavit state or imply that the repealed Positive Discipline Policy was used.

With respect to the Romero documents, the January 11, 2001 memorandum is called a "Training Memo," not a "Written Reminder." (Motion at Exhibit 4A.)  There is nothing in the memorandum that states or even suggests that she was being disciplined, or that she was being disciplined under the repealed Policy.  Similarly on September 24, 2002, Plaintiff was given a "Letter of Training," not a "Written Reminder." (*Id.* at Exhibit 4B.)  Again, there is nothing in the memorandum that states or even suggests that she was being disciplined or that it was being done under the repealed Policy.  There is also no evidence that she was given an "oral reminder" or that any of the procedures discussed in the repealed Policy were followed.

With respect to the Trevas Younger documents, she was given a "Written Warning" on January 30, 2006, not a "Written Reminder." (*Id.* at Exhibit 8A.)  Again, there is nothing in the document that states or suggests that she was being disciplined under the repealed Policy.  There is no evidence that an "oral reminder" was given and no evidence any of the procedures were used. In short, none of the documents attached to the affidavits reflect that the two Plaintiffs or Younger were disciplined under the repealed Policy.

Third, Plaintiffs' alleged "understanding" is not reasonable in light of the fact that even when it was in effect, as discussed above, the Positive Discipline Policy did not contain promissory language. Pursuant to the terms of the Policy, the Lottery, "in its sole discretion," was clearly allowed to apply it or not apply it and it does not require progressive discipline.

Fourth, Plaintiffs' alleged "understanding" is not reasonable in light of the fact that, as noted above, there is nothing in the Policy or the Employee Manuals that says or implies that employees can

only be terminated for "sufficient cause" as Plaintiffs claim.  Indeed, in addition to the numerous Acknowledgment Forms discussed below, the Separation from Employment Policy states that employees can be terminated at any time, and the Introductions to the Policy Manuals state that employees are employed at-will and can be terminated for any reason.  (*See* the discussion and citations on p. 21, *infra*.)

Fifth, as discussed in Defendants' Motions for Summary Judgment, in light of the clear disclaimers in the Acknowledgment Forms, it was not objectively reasonable for Plaintiffs to believe they had a contract.  As detailed in Defendants' Motions for Summary Judgment and the Additional Facts, above, each Plaintiff expressly agreed that they had no contract and could be terminated at-will.  To wit:

• The Employment Applications, which each Plaintiff signed, read and understood, clearly state "I understand that my employment can be terminated, with or without cause, at the option of either the NML[A] or [myself], and with or without warning or notice, at any time by an NML[A]." (Additional Fact 2.)

• The Positive Discipline Policy, along with others, was distributed with an Acknowledgment Form, which was signed by each Plaintiff acknowledging:

> I further acknowledge that neither this Employee Policy Manual, nor this acknowledgment alters the at will nature of my employment with NMLA and none of the provisions in the policy manual create or are intended to create an employment contract or any part of an employment contract, either expressed or implied with the NMLA.  The policies contained within the manual are provided for guidance purposes only.  Such policies and procedures are subject to change at any time solely at NMLA's discretion and if they are changed, I agree to review any such changes.  I understand that employment at the New Mexico Lottery Authority (NMLA) is at will at all times.  At will employment means the employment relationship at any time, for any reason can be terminated with or without cause, at the option of either NMLA or myself, and with or without warning or notice, at any time by NMLA.[5]

(Additional Fact 8.)

---

[5] The parties do not have a form for Dahlstrom, but he has acknowledged that he did not refuse to sign the Acknowledgment Form. (Dahlstrom MSJ at UMF 13.)

- In addition to the above Form and the Employment Application, <u>Plaintiffs signed numerous Acknowledgment Forms, specifically acknowledging that they were at-will.  Many of these Forms were signed after the Positive Discipline Policy was adopted</u>.  Specifically:

  - Dahlstrom signed at least five Acknowledgment Forms, specifically acknowledging that he was at-will. Four of these Forms were signed after the Positive Discipline Policy was adopted. (Dahlstrom MSJ at UMFs 4, 14, 16, 19, 22.) <u>Dahlstrom also testified that after the Positive Discipline Policy was adopted he understood that the Policies were not contracts and he was at-will</u>.  (Dahlstrom MSJ at UMF 15.)

  - Minter signed at least seven Acknowledgment Forms, specifically acknowledging that he was at-will.  Six of these Forms were signed <u>after</u> the Positive Discipline Policy was adopted. (Minter MSJ at UMFs 4, 12-14, 17, 20-21.)

  - Lucero signed at least six Acknowledgment Forms, specifically acknowledging that he was at-will. Five of these Forms were signed <u>after</u> the Positive Discipline Policy was adopted.  (Lucero MSJ at UMFs 4, 12-14, 17, 20.)

  - Romero signed at least five Acknowledgment Forms, specifically acknowledging that she was at-will. Four of these Forms were signed <u>after</u> the Positive Discipline Policy was adopted. (Romero MSJ at UMFs  4, 12-14, 19.)

- <u>Plaintiffs each signed between 7-9 Acknowledgment Forms, agreeing that the Manuals did not constitute contracts</u>.  (Dahlstrom MSJ at UMFs 4-5, 16, 24; Minter MSJ at UMFs 4-5, 12, 14-15, 22-23; Lucero MSJ at UMFs 4-5, 12, 14, 17, 23; Romero MSJ at UMFs 4-5, 12-14, 19.)

- <u>Plaintiffs each signed between 25-27 Acknowledgment Forms, agreeing that the policies both specifically and in general, did not constitute contracts</u>.  (Dahlstrom MSJ at UMFs 4-5, 14, 16, 19-20, 22-

24, 26; Minter MSJ at UMFs 4-5, 12-14, 17-18, 20-22, 24; Lucero MSJ at UMFs 4-5, 12-14, 17-18, 20, 22-23, 25; Romero MSJ at UMFs 4-5, 12-15, 17, 19-21, 23.)

Sixth, Plaintiffs' alleged "understanding" is not reasonable in light of the fact that Plaintiffs were clearly alerted on multiple occasions that the only way an employment contract would exist between an employee and the Lottery was if "a specific document is executed in writing by the employer and employee." However, each Plaintiff admits that they have no such document. (Dahlstrom MSJ at UMFs 3, 17, 25, 27; Minter MSJ at UMFs 3, 15, 23, 25; Lucero MSJ at UMFs 3, 15, 24, 26; Romero MSJ at UMFs 15, 22, 24.)

Seventh, Plaintiffs' alleged "understanding" is not reasonable in light of the language of the Lottery Employee Manuals. The Introductory Statement to the 2000 Manual reads as follows:

> This manual is not a contract of employment, nor is any provision in it meant to be part of any contract of employment either expressed or implied. Employment with NML[A] is employment "at will". This means that either the employee or NML[A] may terminate the employment relationship at any time and for any reason. No employee, manager or supervisor of NML[A] other than the CEO in writing, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the provisions set forth in the Employee Policy Manual.

The 2004 Manual contains similar language. Similarly, the Separation from Employment Policy states that "employees can be terminated from employment at any time." (Dahlstrom MSJ at UMFs 11, 17, 25; Minter MSJ at UMFs 11, 15, 22-23; Lucero MSJ at UMFs 11, 15, 24; Romero MSJ at UMFs 12, 14-15, 21-22.)

Eighth, as discussed above, Plaintiffs' alleged "understanding" is not reasonable in light of the fact there is no evidence of systematic application of the Policy, as required by *McGuiness, supra*. In fact, Plaintiffs have presented no evidence that the Lottery has ever used the Policy.

In short, the Lottery consistently and repeatedly informed Plaintiffs that they were at-will and that the policies and manuals were not contracts.  Clearly in light of the multiple disclaimers, it was not objectively reasonable for Plaintiffs to expect that the at-will employment relationship between themselves and the Lottery was abrogated in favor of an implied contract.

Knowing that they signed numerous Acknowledgment Forms, Plaintiffs try to minimize them and avoid there effect by summarily claiming that they are "ineffective" and falsely claiming that the "existence of a contract disclaimer does not affect the existence of a contract."  (Motion at pp. 8-9.) Plaintiffs are wrong.

Although a contract can be created where there is a disclaimer, it is <u>only</u> when there is a sufficiently reasonable expectation based on representations from the employer.  New Mexico Courts have held that disclaimers relate to the reasonableness of an expectation and that "[p]ersonnel manuals containing such statement[s] *do not* create an implied contract altering the parties' 'at will' relationship." *Paca v. Kmart Corp.*, 108 N.M. 479, 481, 775 P.2d 245, 247 (1989) (emphasis added) (citing *Lukoski*, 106 N.M. at 666-67, 748 P.2d at 509-10 (1988)); *see also Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 714, 917 P.2d 1382, 1383 (1996) (holding no implied contract created given "express reservation of the right to terminate an employee for any reason").  Here, based on the numerous Acknowledgment Forms signed by Plaintiffs and the plain language of the policies, it is simply not reasonable for Plaintiffs to "understand" they had a contract with the Lottery. Accordingly, based on the above, Plaintiffs did not have a contract and their Motion should be denied.

**C.    The Positive Discipline Policy was repealed in 2002, over five years before Lucero's layoff and the other Plaintiffs quit.**

Recognizing that the repeal of the Positive Discipline Policy is a fatal fact to their claims, Plaintiffs cite two non-New Mexico cases, and argue that the repeal was "ineffective. . . because it was

done without their consent and without providing them additional consideration." [6] (*Id.* at p. 11.)

Plaintiffs' argument that "consent" and "consideration" were required fails for a number of reasons.

First, Plaintiffs' argument fails because it assumes a contract existed. However, as discussed above and in Defendants' Motions, the Positive Discipline Policy did not create an implied employment contract. Because no contract existed, the Lottery was free to change the policy as it wanted.

Second, this argument fails because, as this Court stated in *Fierro v. Mesa Verde Enterprises, Inc.*, Civ. No. 06-410 JH/WDS (Doc. 51), "New Mexico law requires no mutual assent or consideration for contracts implied from employment policies; rather, those elements are implied by the employee's commencement or continuation of work under the altered provisions. *Citing Hartbarger v. Frank Paxton Lumber Co.*, 115 N.M. 665, 669-72, 857 P.2d 776, 780-83 (1993)." *See also, Steiber  v. Journal Publ'g Co.*, 120 N.M. 270, 273, 901 P.2d 201, 204 (Ct. App. 1995) (holding that an at-will employee accepts unilateral, prospective modifications by continuing the employment after the modification).

Here, Plaintiffs were informed that the Policy was repealed. However, for over five years after the Policy was repealed, they continued to work for the Lottery, and continued to sign Acknowledgment Forms acknowledging that they were at-will and that the Policies were not a contract and could be

---

[6] Plaintiffs cite *Gabe v. County of Clark*, 701 F.2d 102 (9th Cir. 1983) and *McPhail v. Milwaukee Lumber Co., et al*, 999 P.2d 1144 (Or. App. 2000), for the proposition that notice or consideration is needed to modify an employment contract. First, these cases are not helpful because they are not based on New Mexico law. Second, these cases do not help Plaintiffs' because both are distinguishable from the facts at hand. For example, in *Gabe*, the plaintiff was hired into a "permanent" civil position and the court merely held that the plaintiff was entitled to notice of the change and an opportunity to decide whether to continue his employment. In *McPhail*, the Plaintiff was "promised employment until age 65," and while the court held that, under Oregon law, consideration was required to alter that promise, the case is factually and legally distinguishable. Unlike the cited cases, here Plaintiffs were employed at-will from the very beginning. Moreover, when the policy was first adopted, each plaintiff signed an acknowledgment that the Policy did <u>not</u> create a contract and did <u>not</u> alter their at-will employment. (Additional Fact 8.)  When the Policy was repealed, Plaintiffs <u>again</u> signed an Acknowledgment Form, acknowledging receipt of notice of the repeal and each agreed <u>in writing</u>: "I understand the NMLA is an 'at-will' employer." (Additional Fact 17.)  Each of the Plaintiffs continued to work for the Lottery for 5 years, signing several more Acknowledgment Forms that they were at-will. (Additional Facts 18-21.) Finally, as noted below, the law in New Mexico requires no assent or consideration.

modified.  There is no evidence that any of the Plaintiffs while employed by the Lottery ever claimed that even after the repeal of the policy it still applied to them.  Thus, mutual assent and consideration is implied by Plaintiffs' continuation of work after the Policy was repealed.

Third, Plaintiffs' argument also fails because under New Mexico law, <u>the Lottery Board was specifically given the power, pursuant to the Lottery Act, to adopt and repeal policies</u>.  Specifically, the Act states that the Authority has the <u>"power"</u> to <u>"adopt, amend and repeal bylaws, rules, policies and procedures for the conduct of its affairs and its business</u>."  NMSA 1978, § 6-24-6 (Powers of the authority).  Thus, no "permission" or consideration was necessary because the Lottery was acting pursuant to its express powers under the Lottery Act.

Finally, Plaintiffs' argument fails because, when Plaintiffs were given the policy, the Lottery specifically stated:  "The policies contained within the manual are provided for guidance purposes only. Such policies and procedures are subject to change at any time solely at the NMLA's discretion and if they are changed, I agree to review any such changes."  (Dahlstrom MSJ at UMF 12; Lucero MSJ at UMF 12; Minter MSJ at UMF 12; Romero MSJ at UMF 12.)  Thus, the Lottery specifically retained the right to change the Policy and no consideration "permission" or advance notice was required.

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons, this Court should deny Plaintiffs' Motion, and award Defendants their costs and reasonable attorney's fees incurred herein.

CONKLIN, JENKE, WOODCOCK & ZIEGLER, P.C.

By: _____/s/_____

     Robert C. Conklin
     John K. Ziegler
     320 Gold Avenue SW, Suite 1111
     Albuquerque,  NM  87102
     Telephone:  505-224-9160
     *Attorneys for Defendants*

I hereby certify that on April 28th 2008, I filed this document with the Court Electronically through the CM/ECF System.

Warren F. Frost
Law Office of Warren F. Frost, PC
PO Box 641
Logan,   NM   88426

Timothy L. Rose
The Rose Law Firm, PC
1096 Mechem Drive, Suite 309
Ruidoso,   NM   88345

_____/s/_____

John K. Ziegler